FILED

UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF VIRGINIA

2014 SEP 30  P 4: 53

RICHMOND DIVISION

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | |
|---|---|
| AGUSTIN BOJORQUEZ-MORENO, <br> NORBERTO SEPULVEDA-CABRERA, <br> ALEJANDRO SALDANA-COTA, <br> LEONARDO VERDUGO-SANTOS, and <br> FLAVIO SEPULVEDA-CABRERA, <br><br>     Plaintiffs, <br> vs. <br><br> SHORES & RUARK SEAFOOD COMPANY, INC., <br> URBANNA SEAFOOD COMPANY, INC., and <br> RUFUS H. RUARK, JR. <br><br>     Defendants. | No. 3:14CV670 |

COMPLAINT

PRELIMINARY STATEMENT

1. The Plaintiffs are five migrant agricultural workers employed by Shores and Ruark
Seafood Company, Inc. ("Shores & Ruark"), Urbanna Seafood Company, Inc. ("Urbanna"), and
Rufus H. Ruark, Jr. of Urbanna, Virginia (collectively referred to as "Defendants").  Defendants
offered Plaintiffs employment as seafood processors under the H-2B work visa program, and
Plaintiffs accepted their offers and traveled from Mexico to Virginia to work for Defendants.
Plaintiffs bring this action to secure and vindicate their rights under the Fair Labor Standards
Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Migrant and Seasonal Agricultural Worker
Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"), and Virginia contract law.

2. The Defendants failed to properly pay Plaintiffs minimum wages as required by the FLSA. In addition, Defendants violated the wage statement, wage payment, and working arrangement provisions of the AWPA and failed to pay wages and provide other benefits as required by federal regulations applicable to Plaintiffs' employment as H-2B guest workers and incorporated in Plaintiffs' working arrangements. Additionally, Defendants breached their employment contract with Plaintiffs, causing injury to the Plaintiffs. Further, Defendant Shores & Ruark and Defendant Urbanna each breached their respective contracts with the U.S. Department of Labor, and in doing so, caused injury to the third party beneficiaries of those contracts, the Plaintiffs.

3. Plaintiffs seek an award of monetary damages, declaratory and injunctive relief, statutory and/or actual damages, and pre- and post-judgment interest to make them whole for damages each of them suffered due to Defendants' violations of the law. Plaintiffs seek declaratory and injunctive relief to ensure that they are not subjected to similar practices in the future.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), this action arising under the FLSA; by 29 U.S.C. § 1854(a), this action arising under the AWPA; by 28 U.S.C. § 1331, this action arising under the laws of the United States; and by 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law contract claims, because these state claims are so closely related to the federal claims that they form part of the same case or controversy.

5. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Defendants are residents of this district, headquartered in Middlesex County, Virginia.

## PARTIES

7. Plaintiffs are citizens of and maintain their permanent residences in Mexico. At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor.

8. Plaintiff Agustin Bojorquez-Moreno worked for Defendant Shores & Ruark under H-2B visas from approximately 2009 through 2014. He worked for Defendant Urbanna under an H-2B visa from October 2, 2013 to December 31, 2013. Between January 1, 2014 and early March, 2014, he continued working under an H-2B visa sponsored by Shores & Ruark.

9. Plaintiff Norberto Sepulveda-Cabrera worked for Defendant Shores & Ruark under H-2B visas from approximately 2009 through 2014. He worked for Defendant Urbanna under an H-2B visa from October 2, 2013 to December 31, 2013. Between January 1, 2014 and early March, 2014, he continued working under an H-2B visa sponsored by Shores & Ruark.

10. Plaintiff Alejandro Saldana-Cota worked for Defendant Shores & Ruark under H-2B visas from approximately 2009 through 2014. He worked for Defendant Urbanna under an H-2B visa from October 2, 2013 to December 31, 2013. Between January 1, 2014 and early March, 2014, he continued working under an H-2B visa sponsored by Shores & Ruark.

11. Plaintiff Leonardo Verdugo-Santos worked for Defendant Shores & Ruark under H-2B visas from approximately 2009 through 2014. He worked for Defendant Urbanna under an H-2B visa from October 2, 2013 to December 31, 2013. Between January 1, 2014 and early March, 2014, he continued working under an H-2B visa sponsored by Shores & Ruark.

12. Plaintiff Flavio Sepulveda-Cabrera worked for Defendant Shores & Ruark under H-2B visas from approximately 2010 through 2014. He worked for Defendant Urbanna under an H-2B visa from October 2, 2013 to December 31, 2013. Between January 1, 2014 and early March, 2014, he continued working under an H-2B visa sponsored by Shores & Ruark.

13. At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802 and 29 C.F.R. § 500.20(p), in that they were employed in agricultural employment of a seasonal or temporary nature handling and processing oysters, an agricultural commodity, in their unmanufactured state and were required to be absent overnight from their permanent homes while engaged in agricultural employment with Defendants.

14. At all times relevant to this action, Plaintiffs were employees of the Defendants within the meaning of 29 U.S.C. § 203(e)(1).

15. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

16. At all times relevant to this action, Plaintiffs were engaged in commerce or the production of goods for commerce, or were employed by Defendants in an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C.

§ 203(s)(1)(A), in that the Defendants operated and maintained an oyster processing plant that sold its products to businesses in various states outside of Virginia.

17. Defendant Shores & Ruark is a closely held Virginia corporation that operates and maintains its principal address in Urbanna, Middlesex County, Virginia.

18. At all times relevant to this action Defendant Shores & Ruark was an agricultural employer of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a processing facility and employed Plaintiffs and other migrant agricultural workers.

19. Defendant Urbanna is a closely held Virginia corporation that operates and maintains its principal address in Urbanna, Middlesex County, Virginia. Plaintiffs' H-2B visas from October 2, 2013 to December 31, 2013 were in the name of Urbanna, and the majority of Plaintiffs' paychecks during that time were issued by Urbanna. During that period, however, Plaintiffs performed the same work—shucking oysters in the same location and under the same supervisor—that they performed for Shores & Ruark both before and after that period.

20. At all times relevant to this action Defendant Urbanna was an agricultural employer of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a processing facility and employed Plaintiffs and other migrant agricultural workers

21. Defendant Rufus H. Ruark, Jr. ("Ruark") is the president of Shores & Ruark and an officer of Urbanna. At all times he maintained significant involvement in the management and day-to-day operations of Shores & Ruark and Urbanna. Ruark also maintained substantial control over the terms and conditions of Plaintiffs' employment, including setting their pay rates and directing the Plaintiffs to reimburse the Defendants for Plaintiffs' inbound travel expenses.

22. At all times relevant to this action, Defendant Ruark employed the Plaintiffs within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

23. Urbanna and Shores & Ruark constitute a single enterprise within the meaning of the FLSA and the AWPA.

24. Urbanna and Shores & Ruark have interrelated operations, common ownership and financial control, and common management such that they were joint employers, along with Ruark, of the Plaintiffs as that term has been defined and interpreted under the FLSA and the AWPA.

## FACTS

### (H-2B Visas and Recruitment of Workers)

25. An employer in the United States may import foreign guest workers to perform unskilled labor of a temporary nature if the United States Department of Labor certifies that: (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §1101(a)(15)(H)(ii)(b). Individuals admitted in this fashion are commonly referred to as "H-2B workers."

26. An employer seeking the admission of H-2B workers must first file a temporary labor certification application with the United States Department of Labor. 20 C.F.R. § 655.20 (2008). See, for example, "Application for Temporary Employment Certification, ETA Form 9142," attached to this Complaint as "Exhibit A." This application must include an attestation from the employer that it will abide by applicable regulatory requirements, which include:

a.    Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008).

b.    Limiting deductions from wages to those that are "reasonable." The Department of Labor has determined that expenses related to the worker's procuring a visa and traveling from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA.  Accordingly, the employer may not shift these costs to the worker when doing so would effectively bring the worker's earnings below the applicable minimum and/or prevailing wage for the first workweek of employment.  20 C.F.R. § 655.22(g)(1) (2008) and Field Assistance Bulletin No. 2009-2, August 21, 2009.

27. Claiming a chronic shortage of domestic workers to work at its oyster processing business, Defendant Shores & Ruark applied for temporary labor certification to employ foreign workers in certain jobs between 2009 and 2014, including, *inter alia*, shucking and packing oysters.  The temporary labor certification applications identified Defendant Shores & Ruark as the prospective employer of H-2B workers and sought certification for a period from October 1, 2009 to June 30, 2010; October 1, 2010 to June 30, 2011; October 1, 2011 to June 30, 2012; October 1, 2012 to June 30, 2013; and October 1, 2013 to June 30, 2014.

28. Defendant Urbanna also sought temporary labor certification to employ foreign workers under the H-2B program at various times between 2009 and 2013, including for the time period between October 2, 2013 and December 31, 2013.

29. The temporary labor certifications requested by Shores & Ruark sought permission to import H-2B workers to pry open oyster shells with a knife and remove the oyster from the shell, a task commonly referred to as "shucking."

30. The temporary labor certifications sought by Urbanna requested permission to import H-2B workers to remove meat from blue crabs using fingers and knives. At no time relevant to this Complaint, however, did Urbanna direct Plaintiffs to remove meat from blue crabs; rather, during the period of their visas with Urbanna, Plaintiffs worked shucking oysters.

31. During the period of their H-2B visas sponsored by Urbanna, the Plaintiffs worked in the same facility where they worked pursuant to H-2B visas sponsored by Shores & Ruark. During the period of their visas with Urbanna, the Plaintiffs performed the same work—shucking oysters—that they performed for Shores & Ruark, and they were supervised by the same supervisor, whom the Plaintiffs knew as "Chapo."

32. Each of the temporary labor certifications contained an attestation pursuant to 20 C.F.R. § 655.22 (2008) that Shores & Ruark and Urbanna would abide by applicable regulatory requirements, which include those described in Paragraph 26.

33. Each of the temporary labor certifications also contained an attestation that the position offered is a bona fide full-time position, as required by 20 C.F.R. § 655.22. In addition, both Shores & Ruark and Urbanna stated on their requests for temporary labor certifications that the positions offered to H-2B workers were for 40 hours of work per week.

34. The attestations and statements contained in the H-2B temporary labor certifications and the regulatory requirements they contain form part of the working arrangements between Defendants and Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1822(c).

35. The United States Department of Labor reviewed Defendants' temporary labor certification applications, each of which incorporated the terms described in Paragraph 26 of this Complaint. The United States Department of Labor ultimately approved, either fully or partially, each of Defendants' temporary labor certification applications in question pursuant to 20 C.F.R. § 655.23(b), allowing Defendants to import H-2B workers to fill the manpower needs set out in its temporary labor certification applications for the period from 2009-2014.

36. Plaintiffs maintain their permanent residences at various locations in Mexico, where they learned of the job opportunities with Defendants.

37. At the beginning of the 2009-2010 through 2012-2013 seasons, Defendant Shores & Ruark, through its agent and employee Arcadio Limon Velasquez, sent Plaintiffs the sums of money they would need to pay their visa and other fees and inbound transportation costs for travel to the U.S. At the beginning of the 2013-2014 season, Plaintiffs followed the same process to travel to the U.S. under visas sponsored by Urbanna. For the 2013-2014 season, the total cost of travel to the U.S., including visa fees, transportation, and other fees, was approximately $760 per person. In previous seasons, the total amount provided by Shores & Ruark to cover these costs was a similar or slightly smaller amount. Plaintiffs used these funds to purchase tickets to the U.S. and to pay visa and other required fees.

38. After Plaintiffs began work for Shores & Ruark and/or Urbanna, they were required to repay over the course of the season the amounts provided by the Defendants to pay for the visa and other required fees, and they understood that repaying these amounts to the Defendants was a condition of their employment. On at least one occasion in late winter of 2014, Defendant Rufus Ruark, Jr. told several of the Plaintiffs that they could not return to Mexico until they had

repaid all of the money Defendants had spent for the visa and other required fees. At the time

Ruark made that statement, however, the Plaintiffs were no longer working for Urbanna but were

instead working on H-2B visas sponsored by Shores & Ruark.

39. The Plaintiffs' repayment of these expenses served to reduce their earnings below the

minimum wage established by the FLSA and the prevailing wage required under the H-2B

program.

40. The pre-employment visa and transportation expenses which the Defendants charged

to the Plaintiffs as set out in Paragraphs 37 and 38 were primarily for the benefit of the

Defendants, within the meaning of the FLSA, 29 C.F.R. §§ 531.32(c) and 778.217.

41. Defendant Shores & Ruark and Defendant Urbanna each offered Plaintiffs work

according to the terms and conditions of each of their respective H-2B visas and attendant

regulations, and Plaintiffs accepted these offers, traveling from Mexico to Virginia to perform

work for Defendant under the terms and conditions of the H-2B visa program and attendant

regulations.

### (Oyster Production)

42. Shores & Ruark sells oysters harvested from the Rappahannock River and/or nearby

waters to retailers in areas across Virginia and in Boston, North Carolina, New York, and

Maryland.

43. American oysters (*crassostrea virginica*), while once plentiful in the Chesapeake

Bay, have declined precipitously in numbers in the past hundred years because of dredging,

overharvesting, pollution, and disease. By 2010, oyster harvests across the Chesapeake Bay had fallen to less than one percent of their historic highs in the late 19th century.

44. Oyster production in Virginia has increasingly turned to a process often called "oyster farming" or "aquaculture" to ensure a reliable supply of oysters. Shores & Ruark states on its website, http://shoresandruark.com/?page_id=132 (last visited September 30, 2014), "Shores & Ruark is proud to offer a sustainable product, oysters. We farm raise oysters in two different ways based on our two desired end products."

45. The two methods Shores & Ruark uses to farm-raise oysters are "spat on shell," used for growing clusters of oysters; and individual oyster.

46. In Shores & Ruark's "spat on shell" cultivation, oyster shells that have been sun-dried for at least a year are cleaned and gathered. These shells are put in cages and the cages are lowered into large tanks. The tanks are then filled with filtered seawater at a temperature of approximately 75 degrees. Eyed larvae purchased from a supplier are added to the tank and allowed to swim around so they will set on the shells in the tank. After approximately 5 days, the water is emptied from the tank, and the shells are loaded onto a barge for planting. The oyster shells loaded with spat are then planted in designated areas in the Rappahannock River and left to grow for approximately a year, until the oysters reach market size.

47. In its individual oyster cultivation, Shores & Ruark purchases oyster seed from a hatchery, Oyster Seed Holdings. The seed, about 2 mm in size when bought, is put into Shores & Ruark's land-based nursery system, where it grows in upwellers or silos until the oysters are larger than ¼". The oysters larger than ¼" are graded out using a shaker table that screens out the larger oysters and allows the smaller ones to fall through the screen to go back into the nursery.

The larger oysters are put into a paddle wheel floating upweller system, or "flupsy," which allows them to grow quickly. When the oysters have reached approximately ¾" they are graded out, and the larger oysters are put into bags and then put into bottom cages in the Rappahannock River, where they are checked regularly. When the cages are pulled from the river, oysters larger than 3" are harvested and sent to the plant, and oysters smaller than that size are returned to cages in the river.

**(Oyster Processing)**

48. Shores & Ruark uses workers to manually shuck oysters and place the meats in several different sizes and types of containers for sale to restaurants, retailers and others. Shucked oyster meats are graded and sold in 8-ounce and 12-ounce cups, or in pint, quart, half-gallon or gallon containers and refrigerated for later shipment to customers and other dealers.

49. Throughout the course of their employment with Defendants, Plaintiffs were employed in the handling and processing of oysters in their unmanufactured state.  Plaintiffs shucked oysters for Shores & Ruark as described in the company's temporary labor certification applications, and performed the same work for Urbanna from October through December of 2013.

50. To shuck the oysters, Plaintiffs inserted a thick-pointed, shucking blade into the hinge between two oyster valves and twisted the blade until the oyster popped.  The workers then slid the blade across to cut the adductor muscle holding the oyster together.  Some workers use thin, sharp-bladed oyster knives that are inserted between the shells opposite from the hinge area to sever the adductor muscle and open the oysters shell.

51. Plaintiffs placed fully shucked oyster meats into containers for weighing. After weighing, the meats were prepared for packaging, freezing, or immediate delivery to Defendants' customers.

52. Defendants Shores & Ruark and Urbanna required Plaintiffs to wear gloves as protection from shucking knives, as well as to wear aprons. Plaintiffs were required to purchase from Defendants Shores & Ruark and Urbanna their own oyster knives, aprons, and gloves.

53. During the 2009-2010, 2010-2011, 2011-2012, 2012-2013, and 2013-2014 oyster processing seasons, Defendants failed to provide each Plaintiff on every pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d). Among other violations, the wage statements did not show the number of compensable hours worked, the basis on which wages were paid, or the number of piece work units earned.

54. At no time during their employment with Defendants did Plaintiffs ever receive a written disclosure statement at the time of recruitment stating information such as the wage rate to be paid, the period of employment, the benefits to be provided to employees, or the costs to be charged, as required by 29 U.S.C. § 1821(a).

55. For each season that they were employed by Defendants, there were lengthy periods of time when Plaintiffs were provided with far fewer hours than the 40 hours per week certified in the H-2B applications. During the 2012-2013 season, for example, there was a period of several weeks when the workers were provided with almost no work at all. In addition, during each season, there were substantial periods when the Plaintiffs received only a few hours of work each day.

56. Throughout the course of Plaintiffs' employment, Defendants withheld sums from Plaintiffs' wages for required tools, including gloves, aprons, and knives. These tools were primarily for the benefit of Defendants, within the meaning of the Fair Labor Standards Act and its implementing regulation, 29 C.F.R. §531.3(d). No portion of these expenditures was ever reimbursed to Plaintiffs.

## COUNT I

### FAIR LABOR STANDARDS ACT

### (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

57. This count sets forth a claim for damages and declaratory relief by Plaintiffs for Defendants' violations of the minimum wage provisions of the Fair Labor Standards Act.

58. Each of the Plaintiffs has consented to be a party plaintiff under the FLSA pursuant to 29 U.S.C. § 216(b), and their consents are attached to this Complaint as "Exhibit B."

59. Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 for every compensable hour of labor performed during each workweek they were employed.

60. The violations of the minimum wage provisions of the FLSA as set out in Paragraphs 38 and 39 resulted in part from Defendants' requirement that Plaintiffs reimburse them for pre-employment expenses the Defendants incurred in bringing Plaintiffs to the U.S. to work under H-2B visas. These expenses were primarily for the benefit of the Defendants, as set forth in Paragraph 40.

61. The violations of the minimum wage provisions of the FLSA also resulted from Defendants' requirement that Plaintiffs purchase work tools which primarily benefitted Defendants, as described in Paragraphs 56.

62. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). Defendant Shores & Ruark had been previously sued for FLSA violations and was familiar with the requirements of the Act.

63. As a consequence of Defendants' violations of the FLSA, Plaintiffs are entitled to recover the minimum wages due each of them, plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

## COUNT II

### MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

64. This count sets forth a claim by Plaintiffs for damages, declaratory relief, and injunctive relief with respect to Defendants' violations of the AWPA between October 2009 and March 2014.

65. At all times relevant to this action, Plaintiffs were employed in agricultural employment involving the handling, processing, freezing, or grading prior to delivery for storage of an agricultural commodity in its unmanufactured state.

66. In violation of the AWPA, 29 U.S.C. §1822(c), Defendants violated without justification the working arrangement with Plaintiffs by:

a. Failing to pay Plaintiffs a wage at least equal to the applicable prevailing wage as required under the H-2B regulations;

b. Failing to provide 40 hours of work per week to the Plaintiffs, contrary to the certifications in the requests for temporary labor certification by which Defendants obtained workers under the H-2B visa program; and

c. Failing to pay Plaintiffs minimum wages as required by the FLSA.

67. Defendants failed to provide each Plaintiff on every pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d). Among other violations, the wage statements omitted the number of compensable hours worked, the basis on which wages were paid, and the number of piece-work units earned.

68. Defendants failed to provide a written pre-employment disclosure at the beginning of each season, as required by the AWPA, 29 U.S.C. § 1821(a), and its implementing regulations, 29 C.F.R. § 500.75

69. Defendants violated the AWPA, 29 U.S.C. § 1822(a), by failing to pay Plaintiffs their wages when due for work performed between October 2009 and March 2014. Defendants failed to pay Plaintiffs minimum wages as required by the FLSA for this work. Defendants also failed to pay Plaintiffs wages at least equal to the applicable prevailing wage during their employment.

70. The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

71. As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs have suffered damages.

## COUNT III

### BREACH OF EMPLOYMENT CONTRACT

(BY ALL PLAINTIFFS AGAINST DEFENDANT SHORES & RUARK
AND DEFENDANT URBANNA)

72. This count sets forth claims for damages against Defendant Shores & Ruark and Defendant Urbanna resulting from the breach of their respective employment contracts with Plaintiffs.

73. Defendants offered to apply for and secure H-2B work visas for the Plaintiffs if Plaintiffs agreed to travel from Mexico to Virginia to perform work for Defendants under the terms and regulations of the H-2B work visa program, and with the assurances provided by Defendants in their temporary labor certification applications as described in Paragraphs 27, 29, 32, 33 and 41 (Shores & Ruark), and Paragraphs 28, 30, 31, 32, 33, and 41 (Urbanna).

74. Plaintiffs accepted these offers of employment under the H-2B visa program from Defendants, traveled from Mexico to Virginia, and performed satisfactorily all employment duties and responsibilities required of them under the employment contracts with Defendants.

75. Defendants breached their respective employment contracts with Plaintiffs by:

    a.    Failing to pay Plaintiffs a wage at least equal to the applicable prevailing wage as required under the H-2B regulations;

b.    Failing to provide 40 hours of work per week to the Plaintiffs, contrary to the certifications in the requests for temporary labor certification by which Defendants obtained workers under the H-2B visa program; and

c.    Failing to pay Plaintiffs minimum wages as required by the FLSA.

76. The breach of their respective employment contracts by Defendant Shores & Ruark and Defendant Urbanna caused plaintiff substantial injuries, for which Plaintiffs are entitled to actual and consequential damages.

## COUNT IV

### THIRD PARTY BENEFICIARY CLAIM FOR BREACH OF CONTRACT

(BY ALL PLAINTIFFS AGAINST DEFENDANT SHORES & RUARK
AND DEFENDANT URBANNA)

77. This count sets forth a third-party beneficiary claim for damages resulting from the breach of the contracts between the U.S. Department of Labor and Shores & Ruark during the oyster seasons from 2009 to 2014, and between the U.S. Department of Labor and Urbanna during the 2013 oyster processing season.

78. The temporary labor certifications filed by Defendant Shores & Ruark and Defendant Urbanna, as described in Paragraphs 25 through 35, and subsequently approved by the U.S. Department of Labor, constitute valid and enforceable contracts.

79. These contracts were clearly and definitely intended to confer benefits on the Plaintiffs, as they established the essential terms of the working arrangements between Defendant Shores & Ruark and the Plaintiffs, and between Defendant Urbanna and the Plaintiffs, as described in Paragraph 26, and Paragraphs 32 through 35.

80. Plantiffs are third-party beneficiaries of the contracts Defendant Shores and Ruark and Defendant Urbanna each entered into with the U.S. Department of Labor.

81. Defendant Shores & Ruark and Defendant Urbanna each breached their employment contracts with the U.S. Department of Labor by:

      a.     Failing to pay Plaintiffs a wage at least equal to the applicable prevailing wage as required under the H-2B regulations;

      b.     Failing to provide 40 hours of work per week to the Plaintiffs, contrary to the certifications in the requests for temporary labor certification by which Defendants obtained workers under the H-2B visa program; and

      c.     Failing to pay Plaintiffs minimum wages as required by the FLSA.

82. Defendants' breach of their respective employment contracts caused third party beneficiary Plaintiffs substantial injuries, for which Plaintiffs are entitled to actual and consequential damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court will enter an order:

      a.     Granting judgment in favor of Plaintiffs and against Defendants Shores & Ruark Seafood Company, Inc., Urbanna Seafood Company, Inc., and Rufus H. Ruark, Jr., jointly and severally, on Plaintiffs' claims under the Fair Labor Standards Act and awarding each of the Plaintiffs the amount of his unpaid minimum wages, along with an equal amount of liquidated damages;

b.  Declaring Defendants have violated the disclosure, wage-statement, wage-payment, and working-arrangement provisions of the Migrant and Seasonal Agricultural Worker Protection Act;

c.  Granting judgment in favor of Plaintiffs and against Defendants Shores & Ruark Seafood Company, Inc., Urbanna Seafood Company, Inc., and Rufus H. Ruark, Jr., jointly and severally, on Plaintiffs' claims under the Migrant and Seasonal Agricultural Worker Protection Act and awarding each of them his actual damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act;

d.  Granting judgment in favor of Plaintiffs and against Defendant Shores and Ruark Seafood Company, Inc., for breach of their employment contracts with Plaintiffs as set forth in Count III, and awarding Plaintiffs their actual and consequential damages;

e.  Granting judgment in favor of Plaintiffs and against Defendant Urbanna Seafood Company, Inc., for breach of their employment contracts with Plaintiffs as set forth in Count III, and awarding Plaintiffs their actual and consequential damages;

f.  Granting judgment in favor of third party beneficiary Plaintiffs and against Defendant Shores & Ruark Seafood Company, Inc., for breach of Defendant Shores & Ruark Seafood Company, Inc.'s contracts with the U.S. Department of Labor, and awarding each of the Plaintiffs his actual and consequential damages;

g.  Granting judgment in favor of third party beneficiary Plaintiffs and against Defendant Urbanna Seafood Company, Inc., for breach of Defendant Urbanna

Seafood Company, Inc.'s contract with the U.S. Department of Labor, and awarding each of the Plaintiffs his actual and consequential damages;

h.  Permanently enjoining Defendants from further violations of the Migrant and Seasonal Agricultural Worker Protection Act;

i.  Awarding Plaintiffs the cost of this action;

j.  Awarding Plaintiffs a reasonable attorney's fee with respect to their claims under the FLSA;

k.  Awarding Plaintiffs pre- and post-judgment interest; and

l.  Granting such further relief as this Court deems just and equitable.

Respectfully submitted this 30th day of September, 2014,

AGUSTIN BOJORQUEZ MORENO *et al.*

By Counsel

Erin Trodden VSB #71515
  E-mail: Erin@justice4all.org
Tim Freilich VSB #44077
  E-mail: Tim@justice4all.org
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Tel: (434) 977-0553
Fax: (434) 977-0558

James M. Knoepp*
  E-mail: Jim.Knoepp@splcenter.org
Eunice Hyunhye Cho*
  E-mail: Eunice.Cho@splcenter.org
SOUTHERN POVERTY LAW CENTER
1989 College Avenue NE
Atlanta, GA 30317
Tel:  (404) 521-6700.
Fax: (404) 221-5857

ATTORNEYS FOR PLAINTIFFS

*Application for admission *pro hac vice* forthcoming